Our third case for argument today is Amazon Services against the National Labor Relations Board. Mr. Stoltenbach. Good morning. May it please the court, Brian Stoltenbach on Amazon. This appeal presents two combined cases involving two separate petitions for review of a National Labor Relations Board order, two separate but related decisions. In the first decision, the board found that a boilerplate brief legal disclaimer on an off-duty access policy violated section 881 of the Act. In the second decision, the labor board found that Amazon breached a settlement agreement settling prior cases about a different off-duty access policy, and that because of the breach, Amazon was subject to a default judgment in those previously settled cases. Of course, the primary alleged breach was the alleged unlawful disclaimer in the first case, and that's why they're related and consolidated before the court. If I could, I'd like to start by discussing the disclaimer case since it's central to both. The off-duty access policy that Amazon published on June 30th, 2022, is undisputedly lawful on its face. Everyone agrees to that. It's a simple one-sentence policy, and it says employees can't be in the building on their off-duty hours, and they can't be in exterior working areas during their off-duty hours. What happened, however, is that on June 30th, 2022, on one location where the policy was displayed, an Amazon reserved the right to depart from the policy if appropriate. Now, that wasn't supposed to appear there when the policy was written, so when the National Labor Relations Board Philadelphia office notified Amazon's counsel that it was there and that a union was challenging the disclaimer, Amazon promptly removed it. It was gone within eight days of having appeared, and when it removed the disclaimer, Amazon sent an A-to-Z message. Now, A-to-Z is a sent the A-to-Z message to every employee in the United States covered by the policy and said, oops, there was some language on the policy that wasn't supposed to be there. It's now gone. Here's a hyperlink to the policy without the disclaimer, and we assure you that we will not apply this policy in discriminatory fashion. Now, that assurance of non-discriminatory treatment also existed when the policy was first disseminated to employees on June 30th, 2022. I submit that the court's analysis here should begin with the statute that the board purports to be enforcing. The statute is also simple. It's just as simple and straightforward as the off-duty access policy and the disclaimer, and it says that employers can't interfere with employees' Section 7 rights, Section 7 rights being the right to organize a union and otherwise engage in group activity for mutual aid and protection in the workplace. The board never tries to explain, never does explain, how the mere appearance of this disclaimer somehow interferes with employees' rights under the Act, and I would ask you to imagine an employee sitting in their kitchen opening the A-to-Z app and receiving the notification that there's a new off-duty access policy, reading the sentence that says they can't be in the building when they're off-duty, which the board agrees doesn't violate their statutory rights, and then reads the next sentence that says Amazon reserves the right not to enforce this policy if deemed appropriate, and how it can be that the employee reading the second sentence all of a sudden is chilled in their exercise of Section 7 rights. The only way to get there is the implicit assumption that underlies the board's decision that by reserving that right, it must mean that Amazon will, or at least could, enforce the policy discriminatorily, could decide not to enforce it against somebody who's not engaged in Section 7 rights. I have a question for you that I will also ask the board's counsel, which is whether deletion of this reservation affected Amazon's actual authority. I don't believe so. I believe Amazon still... It's a unilateral policy and can be changed unilaterally by its author, right? So I'm going to ask the same question of the board. How can not stating what is legally true and cannot be changed possibly matter to the National Labor Relations Act? I don't think it does, Your Honor. I don't think that deleting the language changed the fact that Amazon could, in a strange circumstance that maybe we can't predict, decide not to enforce the policy, or just delete it. Oh, I can tell you right here, and I'll ask this of the board too. There's a married couple working for Amazon. One gets a call from the other saying, I'm sick, please come and pick me up, right? The person who gets the call shows up and Amazon lets him or her in. Amazon has a right to do that, whether or not there's a stated disclaimer. Agreed. I can't imagine a holding that allowing the spouse of the sick employee to pick up the other spouse violates the National Labor Relations Act. But that seems to be what the board has held, that any, any exceptions to a policy like this are illegal. It seems to be to Amazon as well, Your Honor. Although at the same time in briefing, the board says, well no, there could be an exception because there is board case that includes, that allows for certain exceptions. So the board speaks sort of both ways at the same time. I've, I've so far refrained from asking you what has to be the first question, which is, how can you make the current argument, given that apparently you did not attack Tri-County in the board's proceedings? Because, Your Honor, we're not attacking Tri-County. The third prong of Tri-County, which is what is at issue. You make Tri-County sound like a fork with prongs, or maybe like a deer with prongs in its antlers. Your Honor, that is how it is. You are attacking things said in Tri-County, whether they are statements, or prongs, or forks, or tines, or fingers. Who cares? You're attacking language in Tri-County. On the ground, the Tri-County differs from the National Labor Relations Act. Fine. The board says you did not make this argument adequately before the board. We're not attacking Tri-County. There's the third part of the Tri-County test, is a simple anti-discrimination test, that you can't have, you can't apply an off-duty access policy only to union activity. We have no problem with that particular rule. That's a fundamental rule under the Act. What we're concerned with is how the board, in this case, has misinterpreted, or expanded, or changed that test to be a no exceptions whatsoever under any circumstances rule, which is not found in Tri-County itself. It's found in this case, and we argued that that is not what the third tine of Tri-County means to the board. Now the board decided to disagree with us, and that's why we're here today. But we did argue this to the board, and it disagreed. We're not asking the court to say that that test was wrong. Your reply brief says, quotes, one sentence of all the papers filed before the board. Is that it? Quotes one sentence? Yeah, page 11 of your reply brief says, you told the board that interpreting the third prong of Tri-County to prohibit any and all ability to make exceptions would stretch the Act beyond its reasonable boundaries. That's it. I mean, that doesn't sound like a developed legal argument. I think it was developed throughout all the briefing. I mean, that's it in a nutshell, and that's what I'm saying today, is that the way the board, in this particular case, applied that prong is divorced from the Act itself. And that's what we argued to the board below, and in all of our briefings. Now, in addition to our position that the disclaimer didn't violate the Act in the first place, Amazon would submit that it fixed any alleged violation by removing the disclaimer, telling everybody that the policy had been revised. If you violate the Act for eight days, you violated the Act for eight days, and presumably the board can insist that you announce that you won't violate the Act anymore. Although the board... Why does it matter if you violated the Act only for eight days? The board does have... If you fire all the union organizers and then stop doing that after eight days, you violated the Act. I understand, Your Honor, although I don't think this is quite the equivalent. Of course it's not the same. But the proposition we get, you know, the common law dog gets one free bite. The NLRA employer gets eight free days? That can't be right. Well, Your Honor, under Pasavan and the board's own case law, they do agree that an employer can cure a violation if they do it effectively, and we would submit that it was done effectively here under these circumstances. This wasn't a case where an employer eliminated a policy and didn't tell anybody, or deleted one paragraph from a 60-page document, recirculated it, and didn't tell anybody what was changed. This is a pretty specific communication fixing the alleged error. If I could, I'd like to turn, unless the court has further questions on the disclaimer case, to the default judgment case, because I would like to address that as well. In the default case, the board concluded that Amazon breached a 2021 settlement agreement with the Chicago office of the National Labor Relations Board. The primary alleged breach was the existence of the disclaimer, which the board concluded was unlawful. I won't speak about that anymore. I've already covered that. What I'd like to talk about is why it doesn't matter anyway. It doesn't matter whether the disclaimer was unlawful or not for purposes of the settlement agreement. The settlement agreement had a specific promise from Amazon not to publish a certain type of off-duty access policy. The specific promise was not to publish one that barred employees from the exterior non-working areas of the property. There's a reason why that was the specific promise, because that was the issue in the settled cases. The 2020 policy implemented at the outset of COVID banned employees from being on premises, and the board took the position that that was too broad. The party settled the issue, and Amazon promised not to issue a new off-duty access policy saying essentially the same thing. It didn't issue a policy saying the same thing, and no one argues otherwise. It also promised not to publish a lawful policy for 60 days after it started posting a notice to employees pursuant to the settlement. So there was a promise of forbearance. We have no argument that Amazon breached that promise. It waited beyond the forbearance period before publishing the 2022 policy. Instead what the board seems to say is that by promising not to publish a lawful policy for a particular period of time, it also promised not to publish any sort of unlawful policy at any time ever. But that's just not what the contract between the parties says. The contract is not coextensive with the law. Of course Amazon can't publish an off-duty access policy that's unlawful in any form, but that's what the first case is about. That's the remedy for that potential violation that the board had argued about, not an alleged breach of settlement agreement. The second way the board determined that Amazon violated the settlement agreement is by not assuring employees that they would be, that the off-duty access policy would not be enforced discriminatorily in the policy itself. So as I mentioned before, when Amazon published the policy on June 30th and again when it republished it on July 8th, it sent a notification to every employee in America giving them a link to the policy and promising in no uncertain terms that it would not enforce the policy in a discriminatory fashion. The board says that that assurance was supposed to be in the policy itself, not in the notification to employees. But again, that's not what the settlement agreement says. The settlement agreement says that the assurance of non-discrimination will be in said notification. Now I understand that said notification would ordinarily suggest that somewhere previously the notification would have been described or mentioned, but it wasn't. What was mentioned previously was the reinstatement of a lawful rule. Amazon believed it agreed when it reinstated the lawful rule to provide a notification to employees of non-discrimination and it did so. The General Counsel of the National Labor Relations Board bears the burden of proof on a breach of the settlement agreement and also her agents were the drafters of that language. So that language should be construed to the extent it's ambiguous against the drafter. On the ground that Amazon is some poor, helpless consumer that lacks lawyers. Well I won't say it lacked lawyers. The idea of Amazon asserting contra profferentum against the labor board is absurd. You have better arguments. Another argument we do have is that under the contract, Your Amazon negotiated for the right to notice an opportunity to cure any alleged breach and it just didn't get that here. In the notice of alleged breach from the regional director of the Chicago office, it was asserted that Amazon did not provide an assurance of non-discrimination in quote its notification to employees. Amazon's counsel promptly sent copies of the two notifications to employees saying we won't discriminate in enforcement of this policy and asked the regional director to please explain if there was something else Amazon was supposed to do. Her only response was I believe Amazon has been provided with due process and I respectfully submit that that is not sufficient notice of the alleged breach that was then litigated thereafter. The other alleged breach was the disclaimers existence in June of 2022 through July 8th of 2022. That was not mentioned in the notice of breach at all. That was an allegation being litigated by the Cincinnati office of the National Labor Relations Board. That case in Cincinnati wasn't mentioned. The disclaimer wasn't mentioned. The disclaimer had been gone for over a year so there was no way for Amazon to realize that the disclaimer was later going to be alleged as a breach of the settlement agreement. Without legitimate meaningful notice and an opportunity to cure, it's actually the National Labor Relations Board's general counsel that breached the agreement by issuing a complaint and requesting default judgment. Is there some reason by the way why everybody is referring to this notice as a disclaimer? A disclaimer is something that disclaims authority or power to do something. Whereas this tagline claimed a power to do something, it doesn't disclaim anything. So why are you calling it a disclaimer? I shall henceforth refer to it as a reservation of rights. That's what it is. It's too late for me to go back and revise. I know, but reading these documents, people calling things they aren't, just makes them hard to get through. Amazon respectfully submits that both petitions for review should be granted and both orders should be denied enforcement and I will yield and reserve the rest of my time for potential rebuttal. Certainly counsel. Ms. Sheehy. Good morning. Good morning, Your Honors. Barbara Sheehy for the National Labor Relations Board. I'm going to start directly with Judge Easterbrook's questions since you previewed that you're going to ask me anyway. I'll start right there. So I'm going to start with actually what your second question was, which was, did you, asking the Employer Council whether this issue about the standard, the tri-county standard, that was amplified in St. John's, whether that was an issue that was briefed, whether there was a challenge to that. And as we argue in our brief, and I think as Your Honor recognized, that was not a challenge that they launched. The exceptions brief, I'm sorry, it was the, it was cross motions for summary judgment, came up on sort of a different procedural than I'm used to, but it was in cross motions for summary judgment. In there before the board, the employer takes issue with the application of the third prong of tri-county and as it was applied in St. John's. That is not a challenge to the standard. I know Your Honor has already articulated an issue or a concern with the standard, but Your Honor's concern, notwithstanding, that was not raised by Amazon. I must say, whether or not Amazon is properly attacking the prong of a pitchfork, tri-county actually sounds like a pitchfork because they have three prongs. Anyway, whether or not we have a pitchfork in this case, Amazon has certainly argued before the board and is certainly arguing before us that telling workers about the existence of a legal right to change a policy cannot possibly violate section 8 of the statute. When the legal right exists, whether the workers are told or not, well let me start unraveling that from the back. Sure. Do you agree that the legal right exists whether the workers are told or not? I don't know that I agree that the unfettered right to deviate from the policy. Amazon is the author of the policy and therefore can change it. Isn't that true? That is certainly true. It's a unilateral policy, not a bilateral contract. That's true. That's all we need. So whether or not Amazon states on a web page or anyone else, we have the right to change this policy. They have the right to change the policy. Now unraveling farther back, why does stating something that is true, whether or not it is stated, violate the National Labor Relations Act? So this was, this is a facial challenge. In the reasonable employee reading the policy, yes there was the access policy, you can't come on the property outside your working hours, but the problem comes in is when you then tell employees that you have the right to deviate from this policy at any time. That is akin to going on property with supervisory approval, that's akin to going on property with managerial authorization, and under board law that is not okay. I'm not interested in board law. I'm interested in a direct answer to my question. Why does it violate the National Labor Relations Act? We have just been told in Loper Bright that we will determine what the law is. If there's play in the joints, if the law grants some discretion to the board, fine. But I don't see an argument that the board has discretion here. So why does telling the employees something that Amazon, something that is true whether they're told or not, violate the National Labor Relations Act? I think, so I have a couple different ways that I want to answer this. The first one is the, because board law in St. John's, they explain... We're not dealing with board law. Forget board law. Why does it violate the National Labor Relations Act? As the, could I say, as the board explains in a case, why issuing a policy that on its face tells employees, you cannot come in on the property, period, that's a lawful policy. And then to say something along the lines of, unless we tell you it's okay, unless it's our event, that chills the exercise of section one, I'm sorry, section seven rights. Amazon, you're not dealing with how we set this up. I'm really trying, I'm not trying to... Amazon has this right, whether it says so or not. Indeed, it can't get rid of this right. It is something that goes with being a landowner, right? It couldn't get rid of this right if it tried to. Even if it were to grant an easement to employees to come in, it would be a unilateral grant and could be unilaterally rescinded. So why does having this right violate the National Labor Relations Act? That's my problem. So I'll go back to Tri-County then, what the board explained in Tri-County, where they say you can have, I'm sorry, I can't see beyond what the board has though. So I'm trying to remind the court this, so I'm going to get to the explanation in Tri-County, but what I want to say also, this conversation that you and I are having is exactly why the obligation is on the employer to make these arguments to the board, so the board can do a better job of articulating what the concerns are and responding to those. I am limited now to what the board has already said, which is Tri-County. In Tri-County, they talk about whether an employer has absolutely a property right, and if it wants to exclude employees, absolutely, you can jealously guard that right. And if you can say, nobody will be allowed on the property outside of those that are working, that is jealously guarding the property right, and the statutory right, Section 7, Section 1, Section 7 rights will yield to that employer's property right. However, as soon as you start making exceptions as an employer to the universal ban... Oh no, that's a different problem. As soon as you start making exceptions, the actual exceptions may violate Section 8. I grant that. Amazon is not alleged to have made any exceptions. What we are dealing with in this case is whether it violates the act to announce that you have a legal right to make exceptions, even though you don't make any exceptions, and even though there's no allegation of anti-union discrimination. So what that announcement, what the board looks at, is that announcement has the effect of chilling the exercise of speech on the property, where, again, the Beth Israel, the Supreme Court talks about it. So the premise is that the workers are too stupid to know that Amazon has that right, whether it announces it or not. I would not say that, no, your honor. I would not say that. That's what you did just say. I did not say that, your honor. The only reason they are being chilled is because they're being told something that they otherwise don't know. Or they're being told... Even though it's absolutely true. Or they're being told by this massive employer that you cannot come onto the property, or you can, only as we deem appropriate. So I don't think that I am saying, and I know I'm not saying that it's a dumb employee that's reading that policy. I'm saying an employee that reads that policy would reasonably understand, Amazon is going to control when I get to come on and off this property. So if you remove that reservation of rights, your honor... No one knows that, whether it's stated or not. There's not a union here. These are employees. There's not a union at this... I'm not sure about any facility. I know at the facility where this happened, there is not a union. Somebody tries to organize them, that will be a union. They've been trying, your honor. They've been trying. I understand that. And presumably, the board is trying to protect the rights of employees to organize. Or enforcing the statute, right. But I hope you can see what my problem is. The board has treated every sentence in Tri-County as if it were identical to Section 8 of the National Labor Relations Act. And that can't possibly be right. The statute is what it is. The board can interpret the statute. We can interpret the statute. But all the board seems to have done is interpret its own decision and forgot about the statute. And it's a problem. Well, it wouldn't have been a problem if... And I'm not necessarily agreeing with that presentation of what the board did here. But if that's truly how Amazon saw that that's what happened, it was incumbent on Amazon to tell the board that. Tell the board, we don't think Tri-County makes sense anymore. We don't think... Okay, well, I had a little conversation with Mr. Stolzenbach about that. Amazon's reply brief quotes some language that says, well, look, if you interpret the third prong of Tri-County to do that, you're extending the act beyond its reasonable boundaries. Now, of course, that's in a reply brief, so you didn't have a chance to reply. I asked Mr. Stolzenbach, is that it? One sentence? And he said, no, there are lots of things like that. Now, are you saying there aren't lots of things like that, that that sentence is all by itself? I'm saying that in the motion for summary judgment, it is not clearly presented by the employer that they were challenging more than just the application of the third prong. And I'll tell you why, because I think it's quite clear why they weren't doing that. Loper-Bright hadn't issued yet, when they had filed their motion for summary judgment. As soon as Loper-Bright issued, then all of a sudden a light bulb goes off and says, wait a minute, we can go after the board for the very exercise of its interpretation of the statute, even though we never did it before. We just have to convince the court that we are in statutory interpretation grounds. And the board's response to that, were I entitled to a serve reply, for instance, our response to that would be, that is not a sufficiently preserved argument. That is a genuflection to Loper-Bright and a last-ditch effort to bring that case into this one, and it's not. This is undisputed facts. Do you think that what we need to do is figure out whether Mr. Stolzenbach is right, that this sentence, the one that's quoted at page 11 of the reply brief, is just one of many, or is all by itself? I mean, I hate to think that the Court of Appeals is forced to do a census of how many sentences like that are there. No, I don't think that it requires that at all. There is not, in the summary judgment papers, in the briefs to the board, there is not the argument that this standard is wrong. This is, we had a right, we have this, exactly as Your Honor has articulated. That is not an argument that Amazon has made. I'm not saying that in a later case, if somebody raises, pulls the transcript from this case, and says, look at everything that Judge Easterbrook said, these are now in our exceptions board, what do you have to say about this, then certainly we'd be having a different conversation. But that is not at all, and I don't think it requires any sort of special reading or census by this court to look at the summary judgment papers and understand that the set of arguments and the set of concerns that Your Honor is laying out is not what Amazon did. I want to make sure I'm understanding your answers here. You're saying that when Loper Bright came down, it put ideas, everyone's reading it, Amazon reads it, they try to make the arguments potentially. You're not conceding that Loper Bright applies here? Absolutely not. And so, no, as we say in our brief, we say Loper Bright doesn't, first of all, Tenney, obviously we have our jurisdictional bar argument, which I'm not going to flog that horse anymore. It has nothing to do with jurisdiction. The Supreme Court held that exhaustion requirements are non-jurisdictional. No, but to challenge the very test, I think we would be arguing, to raise Loper Bright, I think we are saying that that is jurisdictionally barred. That's what your brief says, but that is flatly inconsistent with the Supreme Court's holding in Santos-Zacharia against Garland, which you don't cite or discuss. We do not, no. The Supreme Court has held that exhaustion requirements in federal statutes are uniformly non-jurisdictional. Anyway, back to Judge Kollar's question. So we, as we say, again, moving off the jurisdictional issue then, as we say in our brief, we do not believe that Loper, first of all, we don't believe it applies. There's not a statutory interpretation. It wasn't presented as a statutory interpretation. I'm sorry, I'm going to clarify. That's my jurisdictional claim, that they haven't launched a statutory argument to bring us within Loper Bright. Not that Loper Bright doesn't apply. Sorry, just to be very clear. There is no jurisdictional problem in this case. None. Just believe me. We have held that. The Supreme Court has held that. Administrative exhaustion requirements are unrelated to jurisdiction. Just proceed. So, but as we say in our brief, and we would have to, we would request further briefing on this if this is an actual concern for the court, we maintain, and we've maintained in other litigation, that the board had special expertise discretion recognized long before Chevron and recognized long after Chevron, and that that continues. So certainly if this court is concerned that Loper, whether Loper Bright has some sort of application, we would request supplemental briefing on the issue of post-Chevron discretion still given to the board. I don't understand that. Loper Bright is raised in Amazon's brief. You had every opportunity to reply in your brief. No, no, but we are saying that we are maintaining that Loper, well we do put in our brief, we do put in our brief that post-Chevron discretion still remains with the board and that transcends Loper. So I still would request supplemental briefing on that specific issue. That notwithstanding, I think there's enough in our brief to go with that the board still maintains discretion and that this is a standard case decided day in and day out by the board. It's not a complicated set of facts. It is settled facts and the application of those facts to settled law. This is not an interpretation of the statute. And again, for that reason we're saying Loper Bright does not apply. Can I just also ask, as Judge Easterbrook said, if there's a violation, there's a violation and we need to address it. That's what we do in this branch, but Amazon puts a policy out. If I'm reading the record right, NRB says, wait a second, that policy violates Tri-County and the settlement agreement. It's changed eight days later. Sure. I'm going to decide the case that's in front of us, but do you have anything you want to share about that decision? Sure. So there were still 200 employees that saw it. And yes, it was changed. There's no dispute about that. But let's be clear on what the distinction is between rescission, which they've rescinded, versus repudiation such that they are not liable anymore for anything, any prosecution or anything under the act. That requires something more than just rescission. They rescinded. They didn't repudiate. The law is very clear on how they have to repudiate. You had your discretion. You exercised it. They did not. And so I guess the main issue, and this is clear in the board decision, I think the main issue is, yes, you rescinded, but you didn't tell anybody what you rescinded. Unless you did a screen cap of what the first policy looked like and the second policy, you had no idea what was changed. And on top of that, they tell you when you made the change, there's no substantive change at all in the policy. What were they supposed to say? I could imagine sending out, our first policy contains a reservation of right to change the policy. We are hereby notifying you that we have a right to change the policy, but we are notifying you that we are no longer notifying you that we have a right to change the policy. Yet they can't say that reservation of rights is not true, because it is true. So what is it they were supposed to say? I think your Honor, premised in the question is sort of the disagreement we've had before as to whether the policy with the additional language is unlawful on its face. So I'm going to answer it slightly differently than to say that what they could have done, they don't have to acknowledge, you don't have to do a mea culpa. You can look at other cases. For instance, ExxonMobil, the employer there said, we issued something that could be construed as this. So here they could have said, we issued a policy that could be construed as coercing the exercise of your rights. It's hereby changed. They don't have to fall on their sword legally. There is an admission of wrongdoing or some specific. They don't have to concede. That's not conceding anything to say we did something that could be construed as. That is not a concession. Let me ask you one more question about the, related to the eight days. This is on the settlement agreement part. The settlement agreement seems to have in it a requirement that the board give notice to Amazon and an opportunity to cure. Yes. How did the board comply with that obligation? It specifically applied on August 14th with the issuance of the notification to Amazon, identifying the breach. And then as we point out in the brief, there were, and then I'll go further. So there was the specific notification of the breach on August 14th. There was Amazon's reply that we can look at. I mean, that's not the board doing it, but. What is the opportunity to cure? They could have repudiated, fully repudiated. They can't repudiate it because they have a legal right to change the policy, whether they've notified the workers or not. Your Honor, we're going back to the fundamental difference that we have, that this facial, that with the words in this policy makes it facially unlawful. Frankly, your question is just saying that you find it lawful. The contract, settlement contract is a contract. The contract obliges the board to give Amazon an opportunity to cure. How did the board keep its contractual promise? What opportunity did it extend to Amazon? So there were six paragraphs total. The first five are cease and desist. They say give us evidence that you cease and desisted. I assume that that happened because those aren't part of this case. The sixth paragraph says show that you have lawfully implemented a policy more than 60 days out, not in question, and that you issued said notification or that said notification of the assurance of rights was in the policy. So the board notifies them that they find them in breach. And let's not forget, contemporaneous with all this is the severance of the very access policy from the complaint, the severance of that allegation from the complaint. Happens on June 27, 2022, 2023, sorry. So about 45 days before Amazon is notified of the breach, they are clearly notified that there is an issue with the access policy of June 2022. Then, so the allegation is severed, new complaint issues. And then on August 7th, there is a motion for summary judgment filed by the board that lays out the entire legal case. Again, before the notice of breach goes to Amazon. The entire legal case for that case is laid out. And on top of that, you have conversations that are happening. The record doesn't disclose exactly what those were, but in the breach letter that goes out on August 14th, and Amazon takes no issue with this in its factual recitation of the case, there is reference by the regional director in that letter saying, as we've said in several conversations, and then referring to the access ban to that breach. So there are conversations, and then there's the August 14 notice. There's the August 28 response that provides the only documents that were relevant in the case. There's only one access policy. There is not a question. I just don't understand what any of this has to do with CURE. But your time has expired. Thank you, Counsel. Anything further, Mr. Stolzenbach? Yes, Your Honor. At the record on appeal in the disclaimer case from pages 251 to 56 of the record, there's an entire argument. We're back to disclaimers. There's an argument about the reservation of rights. The heading is that the disclaimer did not cause the policy to violate the act. Fundamentally, this whole case is about whether the reservation of rights violated the act. That is sufficient to raise the argument that we're raising now. But throughout those pages, which I'm not going to read to you, of course, there's more than one reference to the fact that the interpretation of Tri-County, that ultimately the Board latched onto here, would be beyond the realm of what the act actually says. Amazon preserved its argument throughout the brief to the Board. But, Counsel, did you preserve an argument that Tri-County was wrong? Again, Your Honor, we're not saying that Tri-County itself was wrong. The third part of the test that says you can't discriminate is accurate. In the notice of potential breach or the assertion of breach, Counsel said that Amazon could have repudiated the disclaimer in order to cure it. But, again, there's nothing in the letter that says the disclaimer's at issue and we need you to do more and we need you to repudiate anything. And as far as the notion that somehow the timing of the issuance of the complaint in Region 9 could have told Amazon and its counsel that the only issue that was going to be litigated as a potential breach was the disclaimer, that's not consistent with the record and it's not consistent with the facts. As the notice of alleged breach begins, it cites two cases in Region 13 out of the Chicago office related to the off-duty policy making different arguments having nothing to do with the disclaimer. The counsel for the National Labor Relations Board linked to the docket of that case, which is still ongoing and is pending before an administrative law judge today. The mere mention of an off-duty policy and there being issues would not have caused Amazon to know that the disclaimer, the reservation of rights, that had been deleted over a year ago at the labor board's request was still an issue. If the court has no further questions, I have nothing further in my argument. Thank you, counsel. The case is taken under advisement.